# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J.V., on behalf of herself and all others
similarly situated,

                Plaintiff

v.

NICK LYON, in his official capacity
only as Executive Director of the
MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

                Defendant.

No. 2:17-cv-11184-DPH-RSW

HON. DENISE PAGE HOOD
MAG. R. STEVEN WHALEN

_____/

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release (the "Agreement") is entered into by M.R.[1] individually, and on behalf of the Settlement Class ("Plaintiff" or "M.R.") and Nick Lyon, in his official capacity only as Executive Director of the Michigan Department of Health and Human Services ("Defendant") (collectively referred to as the "Parties"). The Parties intend to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## RECITALS

---

[1] The Parties stipulated and agreed to substitute original Plaintiff J.V. with Plaintiff M.R. This Settlement Agreement reflects that change and has substituted "M.R." for "J.V." except as to the caption and references thereto, which has not changed as of the date of revision of this Settlement Agreement. Due to Plaintiff's interest in protecting his privacy, the sensitive subject matter of this case, the Court's Stipulated Order Granting Plaintiff's Motion to Proceed Under a Pseudonym (Dkt. No. 11), and the Parties' St Plaintiff's full name has been omitted.

A.    On April 14, 2017, Plaintiff filed a putative class action in the United States District Court for the Eastern District of Michigan, Southern Division captioned *J.V., on behalf of herself and all others similarly situated v. Nick Lyon, in his official capacity only as executive director of the Michigan Department of Health and Human Services*, Case No.: 2:17-cv-11184-DPH-RSW (the "Action"). The complaint alleged that Defendant's current prior-authorization criteria for Hepatitis C treatment (the "MDHHS Prior Authorization Criteria") violates three separate provisions of the Medical Assistance Program, Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq*. by: (1) excluding qualified Medicaid recipients from "medically necessary" treatment as required by 42 U.S.C. § 1396a(a)(10)(A); (2) discriminating among similarly situated Medicaid recipients in violation of 42 U.S.C. § 1396a(a)(10)(B); and (3) failing to provide medically necessary treatment with "reasonable promptness" as required by 42 U.S.C. § 1396a(a)(8).

B.    In or around October 2017, the Parties began to discuss the possibility of settlement and agreed to resolve the matter through mediation.

C.    On January 17, 2018, Plaintiff's counsel, Defendant's counsel, and Defendant's corporate representatives participated in a formal mediation session with Magistrate Judge R. Steven Whalen. After several rounds of negotiations, the Parties reached an agreement as to the principal terms of this Agreement.

D.    Defendant has denied and continues to deny the claims alleged in the Action. Defendant maintains that it has strong, meritorious defenses to the claims alleged in the Action and was prepared to fully defend the Action. Nonetheless, taking into account the uncertainty and risks inherent in litigation, Defendant has concluded that it is desirable and beneficial to

2

Defendant that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement.

  E.  Plaintiff believes that the claims asserted in the Action against Defendant have merit, and that Plaintiff would have ultimately been successful in certifying the proposed class under Fed. R. Civ. P. 23 and in prevailing on the merits at summary judgment or trial. Nonetheless, Plaintiff and Class Counsel recognize the expense and delay associated with continued prosecution of the Action against Defendant. Therefore, Plaintiff believes that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved pursuant to the terms and conditions set forth in this Agreement.

  F.  The Parties agree that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Plaintiff, and that it is in the best interests of the Parties to settle the claims raised in the Action pursuant to the terms and conditions of this Agreement.

  NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff and Defendant that in consideration of the terms, conditions, and promises set forth herein, the Action and the Released Claims shall be fully and finally compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in this Agreement.

## AGREEMENT

**1. DEFINITIONS**

  As used in this Agreement, the following terms have the meanings specified below:

  **1.1.** **"Action"** means the above captioned lawsuit, presently pending in the United Stated District Court for the Eastern District of Michigan, Southern Division, Case No. 2:17-cv-11184-DPH-RSW, captioned *J.V., on behalf of herself and all others similarly situated v. Nick*

3

*Lyon, in his official capacity only as executive director of the Michigan Department of Health and Human Services.*

1.2. **"Agreement"** means this Class Action Settlement and Release Agreement between Plaintiff and Defendant.

1.3. **"Amended Prior Authorization Criteria and Claim Form"** means the form attached hereto as Exhibit D, as approved by the Court. The Amended Prior Authorization Criteria, which outlines Defendant's clinical criteria and other coverage requirements for Eligible Michigan Medicaid Beneficiaries to receive direct-acting antiviral treatment is substantially in the form of pages 1 and 2 of Exhibit D attached hereto. The Claim Form, which must be completed and signed or verified electronically by a physician for Class Members who wish to have Defendant process his or her request for direct-acting antiviral treatment, is substantially in the form of pages 3 and 4 of Exhibit D attached hereto.

1.4. **"Class Counsel"** means Dickinson Wright PLLC.

1.5. **"Class Representative"** means M.R. as representative of the Settlement Class.

1.6. **"Court"** means the United States District Court for the Eastern District of Michigan, Southern Division, the Honorable Denise Page Hood presiding, or any judge who shall succeed her as the Judge in this Action.

1.7. **"Defendant"** means Nick Lyon, in his official capacity only as Executive Director of the Michigan Department of Health and Human Services.

1.8. **"Effective Date"** means the fifth business day after which all of the events and conditions specified in Paragraph 8.1 have been met and have occurred.

1.9. **"Eligible Michigan Medicaid Beneficiary"** means a person who is eligible for Michigan Medicaid at the time he or she seeks coverage of Direct Acting Antiviral medications,

4

and who meets the criteria listed on the Amended Prior Authorization Criteria and Claim Form, consistent with Section 3 of the Agreement.

**1.10.** **"Fee Award"** means the amount of attorneys' fees and reimbursement of costs awarded by the Court to Class Counsel.

**1.11.** **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment be entered by the Court approving the Agreement, Incentive Award, and Fee Award as fair, reasonable, and adequate.

**1.12.** **"Final Approval"** or **"Final Judgment"** means the Final Judgment and order(s) of the Court approving the Agreement, Fee Award, and Incentive Award as fair, reasonable and adequate, after the Final Approval Hearing, and dismissing this case with prejudice.

**1.13.** **"Illegal Drug"** means a controlled substance obtained without a valid prescription.

**1.14.** **"Incentive Award"** means an amount awarded by the Court to M.R. for his time and effort bringing the Action and serving as Class Representative.

**1.15.** **"MDHHS"** means the Michigan Department of Health and Human Services.

**1.16.** **"MDHHS Prior Authorization Criteria"** means Defendant's current prior-authorization criteria for Hepatitis C treatment.

**1.17.** **"Medicaid Act"** means Medical Assistance Program, Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq*.

**1.18.** **"Notice"** means the notice of this proposed Agreement and Final Approval Hearing, which is to be sent to Class Members. Two notices will be sent by Defendant to Class Members. Each notice will be sent via first class Unites States mail to the Class Member's last known address in MDHHS' Bridges system. The First Notice will be sent after this Court enters

5

an order preliminarily approving the settlement and is substantially in the form of Exhibit A attached hereto. The Second Notice will be sent after this Court enters a final order approving the settlement and is substantially in the form of Exhibit B attached hereto.

1.19. **"Parties"** means collectively Plaintiff and Defendant, and each of them is a "Party."

1.20. **"Preliminary Approval"** means the Court's certification of the Class for settlement purposes, preliminary approval of this Agreement, and approval of the form of the Notice.

1.21. **"Preliminary Approval Order"** means the order(s) preliminarily approving this Agreement, certifying the Settlement Class for settlement purposes, and directing notice thereof to be distributed to the Settlement Class, which will be agreed upon by the Parties.

1.22. **"Released Claims"** means any and all claims, causes of action, allegations, liabilities, demands, and obligations that were asserted or could have been asserted in the Action, or may arise from the operative facts in the Action, by Plaintiff or any Class Member, including unknown claims, demands, rights, liabilities, and causes of action under federal law or the law of any state, whether based on statutory law, administrative rule, regulation or policy, common law, or equity, whether class or individual in nature, known or unknown, concealed or hidden, regardless of forum, including administrative tribunal, state or federal court, against the Released Parties.

1.23. **"Released Parties"** means Defendant, its insurer, as well as any and all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, agents, associates, affiliates, divisions, holding companies, employers, employees, consultants, independent contractors, insurers, directors,

6

managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, companies, firms, trusts, and corporations.

1.24. **"Settlement Class," "Settlement Class Member,"** and **"Class Member"** means all individuals who:

a. are or will be enrolled in Michigan's Medicaid Program at the time this Agreement is preliminarily approved by the Court;

b. have been or will be diagnosed with a chronic infection of the Hepatitis C Virus;

c. are 18 years or age or older;

d. require, or in the future will require, treatment for Hepatitis C with direct-acting antiviral medication; and

e. do not meet the Michigan Department of Health and Human Services' current treatment criteria, which restricts direct-acting antiviral treatment to individuals with a minimum metavir fibrosis score criteria of F-2 or who meet other MDHHS clinical criteria.

## 2. REQUIREMENT OF COURT APPROVAL AND STIPULATIONS OF THE PARTIES

2.1. This Agreement is conditioned upon Preliminary Approval and Final Approval of the Court. The Parties agree that this Agreement shall be null and void in the event that Court approval is denied. If the Court fails to grant either Preliminary Approval or Final Approval, the Parties shall be restored to their respective positions prior to the time of the execution of this

Agreement. The Parties and their counsel, however, agree to work together, in good faith, to cure any minor or procedural issues that may have caused the Court to initially deny the settlement.

    **2.2.**    The Parties stipulate and agree that the Settlement Class and/or Settlement Class Members shall consist of individuals who:

    a.    are or will be enrolled in Michigan's Medicaid Program at the time this Agreement is preliminarily approved by the Court;

    b.    have been or will be diagnosed with a chronic infection of the Hepatitis C Virus;

    c.    are 18 years or age or older;

    d.    require, or in the future will require, treatment for Hepatitis C with direct-acting antiviral medication; and

    e.    do not meet the Michigan Department of Health and Human Services' current treatment criteria, which restricts direct-acting antiviral treatment to individuals with a minimum metavir fibrosis score criteria of F-2 or who meet other MDHHS clinical criteria.

    **2.3.**    For purposes of settling this Action only, the Parties conditionally stipulate that the prerequisites for establishing class certification have been met with respect to the Settlement Class. If the Court fails to grant either Preliminary Approval or Final Approval, the Parties shall be restored to their respective positions prior to the time of the execution of this Agreement, and there shall be no presumption against Defendant that any class should be certified in this Action, or that the prerequisites for certification have been satisfied, by virtue of Defendant having entered into this Agreement. The Parties stipulate and agree that:

a.　　The Settlement Class is ascertainable and sufficiently numerous as to make it impracticable to join all Class Members as named Plaintiffs.

b.　　There are common questions of law and fact including, but not limited to, whether the MDHHS Prior Authorization Criteria, which denies coverage of direct acting antiviral treatment based on metavir fibrosis score, violates the Medicaid Act.

c.　　Plaintiff's claims are typical of the claims of the Settlement Class Members.

d.　　Plaintiff will fairly and adequately protect the interests of the Settlement Class.

e.　　Dickinson Wright PLLC should be deemed and appointed as Class Counsel and will fairly and adequately protect the interests of the Settlement Class.

f.　　The prosecution of separate actions by individual members of the Settlement Class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct.

g.　　The questions of law and fact common to the members of the Settlement Class predominate over any questions affecting any individual member in such class, and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

2.4.　　For purposes of effectuating this Agreement, the Parties agree to the designation of the Dickinson Wright PLLC as Class Counsel for the Settlement Class.

2.5.　　For purposes of effectuating this Agreement only, the Parties agree to the appointment of M.R. as the class representative.

3.　　**TERMS OF SETTLEMENT**

9

**3.1.**  Defendant agrees to replace the MDDHS Prior Authorization Criteria and institute the Amended Prior Authorization Criteria to provide coverage for direct-acting antiviral treatment to all Eligible Michigan Medicaid beneficiaries diagnosed with chronic Hepatitis C. The Amended Prior Authorization Criteria is attached hereto as pages 1 and 2 of Exhibit D.

**3.2.**  Defendant agrees to expand direct-acting antiviral treatment coverage to all Eligible Michigan Medicaid beneficiaries diagnosed with chronic Hepatitis C based on the following schedule:

a.  Defendant will provide coverage for all eligible beneficiaries with a metavir fibrosis score of F-1 and above on October 1, 2018 and

b.  Defendant will provide coverage for all beneficiaries with a metavir fibrosis score of F-0 an above on October 1, 2019.

**3.3.**  The Amended Prior Authorization Criteria will include, but is not limited to, the following provisions:

a.  The direct-acting antiviral medication must be prescribed by a gastroenterologist, hepatologist, liver transplant or infectious disease physician. If the prescribing provider is not one of the identified specialists noted, the prescriber must submit documentation of consultation/collaboration of the specific case with one of the aforementioned specialists which reflects discussion of the history and agreement with the plan of care with the date noted in the progress note.

b.  Documentation of the patient's use of Illegal Drugs or abuse of alcohol must be noted (i.e., current abuse of IV drugs or alcohol or abuse within the past 6 months). The Michigan Department of Health and Human Services will consider this information for the sole purpose of optimizing treatment.

10

    c.      Documentation of the patient's commitment to the planned course of treatment and monitoring (including SVR 12) as well as patient education addressing ways to reduce the risks for re-infection must be submitted.

**3.4.**    Defendant reserves the right to revise the Amended Prior Authorization Criteria and Claim Form to incorporate updated clinical recommendations or other best practices, consistent with this Agreement.

**3.5.**    Defendant agrees to provide coverage for direct-acting antiviral medications that (i) are approved by the U.S. Food and Drug Administration for the treatment of chronic Hepatitis C; (ii) have a federal Medicaid rebate; and (iii) are listed on Defendant's Preferred Drug List as preferred at the time the beneficiary is approved for treatment.

**3.6.**    If a direct-acting antiviral medication is no longer approved by the U.S. Food and Drug Administration for the treatment of chronic Hepatitis C or no longer on Defendant's Preferred Drug List, it will no longer be covered.

## 4.    RELEASE

**4.1.**    The obligations incurred pursuant to this Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

**4.2.**    Upon the Effective Date, Plaintiff, and the Settlement Class, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Parties.

## 5.    NOTICE TO THE SETTLEMENT CLASS

**5.1.**    Within thirty (30) days of entry of the Preliminary Approval Order, Defendant shall provide, at its own expense, a First Notice describing the Final Approval Hearing, the basic

terms of the compromise embodied in this Agreement to potential Class Members. The First Notice is attached hereto as Exhibit A.

5.2. Defendant will provide Notice via: (1) U.S. Mail to all denied beneficiaries at their last known address, (2) Defendant's website at http://www.michigan.gov/mdhhs/, and (3) posters located in all of Defendant's county offices. The posters will be in substantially the form of Exhibit C, attached hereto.

5.3. The Claim Form must include the required supporting documentation, including approved specialist documentation, in order to ensure the most clinically appropriate and cost-effective treatment.

5.4. Claim Forms submitted to Defendant that do not include approved specialist documentation will be denied and a denial notice will be sent to the beneficiary.

5.5. Defendant will provide claimants with information regarding administrative hearing procedures to adjudicate individual claims that are denied. This information shall include, but is not limited to, the following:

a. Denied claimants have the right to an administrative hearing to contest the Michigan Department of Health and Human Services' denial.

b. Contact information for local legal aid organizations.

5.6. All denial notices will include information regarding the claimant's right to an administrative hearing to contest the denial.

5.7. Defendant will have ninety (90) days to process the Claim Forms. If Defendant does not process the Claim Form within ninety (90) days, Class Counsel must notify Defendant and allow Defendant a reasonable time to investigate, and take corrective action before filing a

12

motion for show cause with the Court. Defendant will process all Claim Forms consistent with the Amended Prior Authorization Criteria and the terms of this Agreement.

## 6. PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER

**6.1.** Within fourteen (14) days after the execution of this Agreement, Class Counsel shall submit this Agreement together with its exhibits to the Court and shall move the Court for entry of Preliminary Approval of the settlement set forth in this Agreement, which shall include, among other provisions, a request that the Court:

a. appoint Class Counsel and Class Representative;

b. certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only and without prejudice to Defendant's right to contest class certification if this Agreement is not approved;

c. preliminarily approve this Agreement for purposes of disseminating Notice to Class Members;

d. approve the form and contents of the Notice, the Claim Form, as well as the method of dissemination;

e. schedule a Final Approval Hearing to review any comments and/or objections regarding this Agreement, to consider its fairness, reasonableness and adequacy; to consider the application for a Fee Award, Incentive Award to the Class Representative; to consider whether the Court shall issue a Final Judgment approving this Agreement; and to consider dismissing the Action with prejudice.

**6.2.** After the First Notice is given, Class Counsel shall move the Court for entry of a Final Judgment, which shall include, among other provisions, a request that the Court:

13

a.    approve the Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and conditions; and declare the Agreement to be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff;

b.    find that the Notice implemented pursuant to the Agreement: (i) constitutes the best practicable notice under the circumstances, (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and their right to appear at the Final Approval Hearing, (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, and (iv) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

c.    find that the Class Representative and Class Counsel adequately represented the Class Members for purposes of entering into and implementing the Agreement.

d.    dismiss the Action with prejudice, without fees or costs to any Party except as provided in this Agreement;

e.    incorporate the Release set forth above, make the Release effective as of the date of the Final Judgment, and forever discharge the Released Parties as set forth herein;

f.    authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of the Agreement and its

14

implementing documents (including all exhibits to this Agreement) that (i) shall be consistent in all material respects with the Final Judgment, and (ii) do not limit the rights of Class Members; and

g.     incorporate any other provisions, consistent with the material terms of this Agreement, as the Court deems necessary and just.

**6.3.**     Within 21 days of the Final Approval Order, Defendant shall send to class members:

a.   The Second Notice, attached hereto as Exhibit B;

b.   The Amended Prior Authorization Criteria and Claim Form, attached hereto as Exhibit D.

## 7.     FEE AWARD AND INCENTIVE AWARD

**7.1.**     Class Counsel will apply to the Court for a Fee Award of one hundred ninety-nine thousand dollars ($199,000.00), which is inclusive of all costs and expenses incurred in the Action. Defendant will not oppose this request for a Fee Award that is in compliance with this paragraph 7.1.

**7.2.**     Defendant shall pay to Class Counsel, within thirty (30) days measured from the Effective Date or an Order from the Court approving the Fee Award, whichever is later, the Fee Award approved by the Court. Any Fee Award payment shall be made via check made payable and mailed to Class Counsel.

**7.3.**     Class Counsel will request that the Court award Class Representative an Incentive Award of five thousand dollars ($5,000.00). Defendant will not oppose an Incentive Award that is in compliance with this paragraph 7.3 and agrees to pay the Incentive Award granted by the Court, without reducing any of the other commitments set forth herein.

7.4.    Defendant shall pay to M.R. the Incentive Award, as approved by the Court, within thirty (30) days measured from the Effective Date or an order dismissing the case with prejudice, from the Court approving the Fee Award, whichever is later. Payment of this Incentive Award shall be made via check, such check to be sent care of Class Counsel.

## 8.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

8.1.    The Effective Date of this Agreement shall not occur unless and until each of the following events occurs.

a.    This Agreement has been signed by the Parties, Class Counsel and Defendant's Counsel;

b.    The Court has entered an order granting Preliminary Approval of the Agreement;

c.    The Court has entered an order finally approving the Agreement, following notice to Class Members, and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment substantially consistent with this Agreement; and

d.    The Final Judgment has become final, or, in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") to which the Parties have consented, that Alternative Judgment has become final.

e.    *Disputes Concerning the Effective Date of Settlement.* If Parties disagree as to whether each and every condition set forth in paragraph 8.1 has been satisfied or waived, they shall promptly confer in good faith and, if unable to resolve their differences within ten (10) business days thereafter, shall present their dispute to the Court for resolution.

16

**8.2.** If some or all of the conditions specified in paragraph 8.1 are not met, or in the event that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Agreement shall be canceled and terminated subject to paragraph 8.3, unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all other Parties. Notwithstanding anything herein, the Parties agree that the Court's decision as to the amount of the Fee Award to Class Counsel set forth above or the Incentive Award to the Class Representative, regardless of the amounts awarded, shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

**8.3.** Effect of reversal on appeal:

    a. Court of Appeals Reversal. If the Sixth Circuit Court of Appeals reverses the Court's order approving the Settlement, then, provided that no appeal is then pending from such a ruling, this Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the order referenced in this section.

    b. Supreme Court Reversal. If the Supreme Court reverses the Court's order approving the Settlement, then, provided that no appeal is then pending from such a ruling, this Agreement shall automatically terminate and thereupon become null and void, on the 31st day after issuance of the order referenced in this section.

c.    Pending Appeal.  If an appeal is pending of an order declining to approve the Settlement, this Agreement shall not be terminated until final resolution of dismissal of any such appeal, except by written agreement of the Parties.

8.4.    If this Agreement is terminated or fails to become effective for the reasons set forth in paragraphs 8.1, 8.2 or 8.3 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, and the Parties shall be returned to the status quo with respect to the Action as if this Agreement had never been entered into and, pursuant to paragraph 9.4 below, this Agreement shall not be used for any purpose whatsoever against the Parties.

## 9.    MISCELLANEOUS PROVISIONS

9.1.    The Parties: (i) acknowledge that it is their intent to consummate this Agreement; and (ii) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement. Class Counsel and Defendant's Counsel agree to seek entry of the Preliminary Approval Order and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

9.2.    The Parties intend this Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff and the Settlement Class against the Released Parties. Accordingly, the Parties agree not to assert in any forum that the

Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.

**9.3.** The Parties have relied upon the advice and representation of counsel, selected by them, concerning the claims hereby released. The Parties have read and understand fully this Agreement and have been fully advised as to the legal effect hereof by counsel of their own election and intend to be legally bound by the same.

**9.4.** Whether the Effective Date occurs or this Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

    a. is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement, the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties;

    b. is, may be deemed, or shall be used, offered or received against Defendant as, an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties;

    c. is, may be deemed, or shall be used, offered or received against Plaintiff or the Settlement Class as an admission, concession or evidence of, the infirmity or strength of any claims asserted in the Action, the truth or falsity of any fact

alleged by Defendant, or the availability or lack of availability of meritorious
defenses to the claims raised in the Action;

**9.5.** The headings used herein are used for the purpose of convenience only and are
not meant to have legal effect.

**9.6.** Definitions apply to the singular and plural forms of each term defined.

**9.7.** References to a person include references to an entity, and include successors and
assigns.

**9.8.** All of the exhibits to this Agreement are material and integral parts hereof and are
fully incorporated herein by reference.

**9.9.** Should any provision in this Agreement be declared or determined to be illegal or
invalid, the validity of the remaining parts, terms, or provisions shall not be affected, and all
remaining provisions shall remain valid and enforceable.

**9.10.** This Agreement and its exhibits set forth the entire agreement and understanding
of the Parties with respect to the matters set forth herein, and supersedes all prior negotiations,
agreements, arrangements and undertakings with respect to the matters set forth herein. No
representations, warranties or inducements have been made to any party concerning this
Agreement or its exhibits other than the representations, warranties and covenants contained and
memorialized in such documents.

**9.11.** This Agreement may not be changed, altered, modified or amended except in
writing and signed by the Parties hereto and their respective counsel and approved by the Court.
This Agreement may not be discharged except by performance in accordance with its terms or by
a writing signed by the Parties.

9.12.   Each counsel or other Person executing this Agreement, any of its exhibits, or any related settlement documents on behalf of any party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

9.13.   This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Agreement. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

9.14.   This Agreement shall be governed by and interpreted in accordance with the laws of the State of Michigan without reference to the conflicts of law provisions thereof.

9.15.   Defendant waives any and all claims for fees, costs, indemnity, or contribution against the Class Representative, Settlement Class Members, or Class Counsel arising out of the Released Claims.

9.16.   This Agreement does not supersede any legislative changes to the Medicaid program or changes to federal regulations, policies, guidelines or informal guidance. Nor does it prevent Defendant from seeking, negotiating, or obtaining, through waivers or other means, more competitive prices on direct-acting antiviral medications.

9.17.   This Agreement is deemed to have been prepared by counsel for all Parties, as a result of negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one party than another.

**9.18.**    Where this Agreement requires notice to the Parties, such notice shall be sent to

the undersigned counsel:

| | |
|---|---|
| **If to Plaintiff's Counsel** | **If to Defendant's Counsel** |
| Dickinson Wright PLLC | Department of Attorney General |
| Attn: Aaron V. Burrell | Health, Education, and Family Svc. Div. |
| 500 Woodward Avenue, Suite 4000 | Attn: Joshua S. Smith |
| Detroit, MI 48226 | PO Box 30758 |
| (313) 223-3500 | Lansing, MI 48909 |
| aburrell@dickinsonwright.com | (517) 373-7700 |
| | smithj46@michigan.gov |

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

22

IN WITNESS WHEREOF, the Parties hereto have caused this Class Action Settlement and Release Agreement to be executed, by their duly authorized attorneys.

Dated: _S- //-/8_

M.R., individually and on behalf of the Settlement Class Members,

By:

Dated: _5/23/18_

Kathleen Stiffler, Deputy Director, Medical Services Administration, for
NICK LYON, in his official capacity only as Executive Director of the MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES

By:

DETROIT 74785-1 1448515v2

23